UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DOUGLAS BOSIN,

       Plaintiff,

                             File No.  1:06-CV-186

v.

                             HON. ROBERT HOLMES BELL

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

       Defendant.

_____/

## O P I N I O N

Plaintiff challenges the denial of benefits under a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  This matter is currently before the Court on the parties' cross-motions for entry of judgment on the administrative record and on Defendant's motion for summary judgment on its counterclaim for restitution of funds.  For the reasons that follow the Court will affirm the administrator's decision to terminate benefits and grant Defendant's motion for summary judgment on its counterclaim for restitution.

### I.

Defendant Liberty Life Assurance Company of Boston ("Liberty Life") provides long term disability insurance to employees of Steelcase, Inc. ("Steelcase") pursuant to a group disability income policy (the "Steelcase LTD Policy").  The Steelcase LTD Policy is an

employee welfare benefit plan covered by ERISA.  The Steelcase LTD Policy contains a six month Elimination Period during which no LTD benefits are payable.  The employee may, however, be eligible for short term benefits.  (Administrative Record ("AR") 468). Thereafter the claim may be converted to a claim for long-term disability benefits.  (AR 293).

During the Elimination Period and the next six months, an employee is disabled if he is unable to perform his "Own Occupation," defined as the occupation that the claimant was performing when his disability began.  (AR 7 & 9).  Thereafter, an employee is disabled and entitled to long-term disability benefits under the Steelcase LTD Policy if he is unable to perform "Any Occupation," defined as any occupation that meets his restrictions or "for which he is or may reasonably become qualified based on his education, training, or experience."  (AR  6-7).[1]

---

[1]The pertinent portion of the policy defines "Disability" or "Disabled" as follows:

b. i. if the covered Person is eligible for the 6 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 6 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his **Own Occupation**; and

 ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of **Any Occupation**.

(AR 7) (emphasis added).

2

Plaintiff Douglas Bosin was employed by Steelcase for over 26 years from November 1976 until May 2003 in various factory positions.  Bosin was covered under the Plan as a result of his employment with Steelcase.  During the course of his employment at Steelcase Bosin was diagnosed with a number of physical conditions, including chronic back pain, hypolipidemia, hypertension, and insulin-dependent diabetes.  His medical history included arthroscopic surgeries on his left knee and had a kidney removed for renal artery stenosis. (AR 182, 371, 441).  An MRI in 2001 showed some disc bulging at L4-L5 with mild spinal stenosis at L3-L4.  (AR 345, 443).  An MRI in 2002 revealed deterioration, including "considerable spinal stenosis at L3-L4, due chiefly to hypertrophied facts at this level." (AR 439).  Dr. Lugthart referred Bosin to neurosurgeon John E. Stevenson, M.D.  According to Dr. Stevenson, the MRI showed moderate arthritic changes and mild facet hypertrophy producing early stenosis, but without obvious significant neural impingement.  Because he suspected that the majority of Bosin's pain was due to arthritis rather than neural impingement, he did not recommend surgery.  (AR 182-83).  Dr. Lugthart then referred Bosin to anesthesiologist Fred M. Davis, M.D., who began a course of injection nerve block therapy from September 2002 through April 2003.  (AR 580).  The treatment did not relieve his low back pain, and he developed neck pain and numbness in his hands.  *Id.*

Bosin was born in 1957.  His last day of work was May 29, 2003.  He was 45 years old.  Bosin filed a claim for disability benefits as a result of back and leg pain.  (AR 74-75).  Dr. Lugthart filled out the physician's statement of disability, giving a diagnosis of

3

degenerative lumbar disk disease with bilateral radiculopathy.  Bosin was approved for short term disability payments commencing May 30, 2003.  (AR 468).  After receiving short term disability benefits for the maximum six month period his claim was converted to a claim for benefits under the Steelcase LTD plan.  (AR 69).  The claim notes indicate that although the LTD benefits were approved effective December 3, 2003, there was no current documentation regarding Bosin's limitations, and an independent medical examination ("IME") was scheduled for December 2003.  (AR 68-69).  The IME was performed by Dr. Russo on December 29, 2003.  Dr. Russo found that although there was "some degenerative change" in Bosin's lumbosacral spine with "mild-to-moderate lumbar spinal stenosis," Bosin's complaints of significant functional limitations were "out of proportion to the pathology identified on diagnostic studies and clinical examination."  (AR 241).   Dr. Russo concluded that Bosin was capable of medium capacity work, without restrictions except on lifting, which would be limited to 50 pounds on occasion and 25 pounds repeatedly.  (AR 242).

On January 13, 2004, Liberty Life sent Dr. Russo's IME to Dr. Lugthart and requested his input.  Dr. Lugthart responded that he did not think that "a man who is in enough pain to be on Oxycontin 40 BID and who has tried & failed with P.T. treatment & pain clinic treatment is able to work."  (AR 233).

On February 10, 2004, an MRI of Bosin's lumbar spine revealed that the spinal canal stenosis at the L4-L5 level was progressive and at the L3-L4 level was mildly progressive.

4

(AR 180).  Bosin underwent back surgery on March 8, 2004. Dr. Stevenson performed bilateral decompressions at L3-L4 and L4-L5.  (AR 176 & 179).

On March 15, 2004, Liberty Life sent Bosin a letter advising him that as of May 27, 2007 his eligibility for long term disability benefits would be based upon a change in definition of disability from "Own Occupation" to "Any Occupation."  Accordingly, Liberty Life requested an updated activities questionnaire form and medical releases.  (AR 196-97).

Bosin completed an Activities Questionnaire in April 2004, at which time he indicated that he could sit one hour, stand one hour and walk 45 minutes, and that in the course of a day he would sit for 6 hours, stand for 4 hours, and walk one hour.  (AR 193-95).

On April 30, 2004, Dr. Stevenson advised Liberty Life that Bosin was totally disabled for an unknown period of time, but at least until his next scheduled visit on May 25, 2004. (AR  175).

By letter dated June 25, 2004, Bosin was approved for LTD benefits under the Any Occupation definition. (AR 105).  The claim notes from that time period indicate that in light of Bosin's surgery in March 2004, the medical evidence supported a finding that Bosin was currently unable to work.  However, Liberty Life indicated that it would reevaluate Bosin in September 2004, at six months post-surgery to determine whether Bosin would still be restricted from even sedentary light level work.  (AR 60).

5

In October 2004 Bosin was provided another Activities Questionnaire to fill out. Bosin noted that he required the use of a cane, but he did not fill any other portions of the form.  (AR 95-97).

Video surveillance was conducted on October 11 and 13, 2004.  (AR 797-804).  The video shows Bosin walking to and from his truck, driving, and standing around his car smoking.  Some of the time he used a cane and some of the time he did not.  (Docket # 12).

Dr. Bala Prasad of MLS National Medical Evaluations,  a board certified orthopedic surgeon, performed a second IME on Bosin on January 12, 2005.  Dr. Prasad noted that although Bosin had a history of chronic osteoarthritic changes and progressive spinal stenosis, Bosin admitted that his radicular symptoms had improved subsequent to his surgery, and the clinical findings and surveillance information indicated that his functional capabilities were greater than what he presented at the examination.   According to Dr. Prasad, the medical evidence supported restrictions on repetitive bending, twisting, and lifting.  However, Dr. Prasad concluded that Bosin had the sustained functional capacity for light duty work on a full-time basis.  (AR 772-787).

A functional capacity evaluation ("FCE") was conducted on March 8, 2005, pursuant to Dr. Prasad's recommendation.  (AR 766-71).  Piotr Mietuslewicz, the Physical Therapist who conducted the FCE, reported that the results of the evaluation indicated that Bosin was "unable to tolerate virtually any job."  (AR 767).  However, he also noted that the overall

score was invalid due to Bosin's minimal effort, the lack of appropriate increase in heart rate, and inconsistencies within trials and in relation to Bosin's diagnosis.  (AR 766-69).

Additional video surveillance was conducted on March 6, 8, and 9, 2005.  (AR 793-95, 805-10).  The video surveillance shows Bosin walking with a cane, driving, shopping, sitting in his truck, and standing while smoking.  (Docket # 12).

On March 31, 2005, after reviewing the FCE and the March 2005 videos, Dr. Prasad submitted a supplemental report, reaffirming his prior conclusion that Bosin was capable of sustained functional capacity within the light category of work as outlined in the January 17, 2005, IME.  (AR 759-64).

Liberty Life sent Dr. Prasad's report and the surveillance videos to Bosin's treating physicians, Dr. Lugthart and Dr. Stevenson.  On May 25, 2005 and June 6, 2005, Bosin's attorney forwarded Liberty Life letters from Dr. Lugthart and Dr. Stevenson.  Both of Bosin's treating physicians stated that they disagreed with the IME, that their findings were not contradicted by the surveillance videos, and that they continued to believe that Bosin was completely disabled from engaging in any occupation.  (AR 701-08).

Liberty Life submitted Bosin's medical records to Dr. John  Wagner of MLS National Medical Evaluations,  a board certified orthopedic surgeon, for an independent peer review. In a report dated June 15, 2005, (AR 640-69), Dr. Warner noted that while the medical and MRI evidence would support a level of physical impairment, "it would not be of the severity that Mr. Bosin and his attending physicians consider accurate." (AR 662).  Dr. Warner also

7

noted that the surveillance videos indicated that Bosin was functioning at a much greater level than he reports to the examiners and at a greater level than what Dr. Lugthart says his restrictions would be. (AR 667). According to Dr. Warner, Bosin's activity level as seen in the surveillance videos is consistent with that of at least a light category of work. (AR 666).

Liberty Life conducted a Transferable Skills Analysis in April 2005, and identified occupational alternatives for which Bosin was qualified based on his education and experience and that were within the restrictions outlined by Dr. Prasad in the IME. (AR 617-18).

In a letter dated July 5, 2005, Liberty Life denied Bosin's claim for continued long term disability benefits effective July 5, 2005 based upon its determination that Bosin was not "disabled" under the "any occupation" standard. (AR 609-16). In accepting the conclusions of Dr. Russo and Dr. Prasad that Bosin is able to perform full time light duty work over the conclusions of Bosin's treating physicians that Bosin is totally disabled from any occupation, Liberty Life noted that the IME, the FCE, Dr. Warner's peer review, and the surveillance video all confirmed that Bosin's activity level is inconsistent with what he self-reports and what his primary care physician claims. (AR 614). Liberty Life found that in light of Bosin's education, work experience, and restrictions as outlined by Dr. Prasad, Bosin would be able to perform the unskilled occupations of Parking Lot cashier, Front Desk/Gate Guard Security Guard, Assembler and machine Operator. (AR 614-15).

By letter dated December 28, 2005, Bosin appealed the July 5, 2005, determination. (AR 505-18).  Bosin submitted updated medical records and statements from Dr. Lugthart and Dr. Davis.  (AR 519-605).  Dr. Lugthart noted that as a result of his severe pain Bosin is prescribed OxyContin, a narcotic pain medication.  (AR 521).  Dr. Davis noted that an MRI taken on August 5, 2005, revealed:

> Enhancing soft tissues in the spinal canal at L4-L5 can be seen.  Narrowing of the spinal canal, spondylolisthesis and severe apophyseal joint degenerative changes are all described at L4-L5.

(AR 581, 597).  Both doctors opined that Bosin's back condition causes constant and severe pain, and that as a result of the pain he is disabled from any full-time employment. (AR 520-22, 580-82).

Liberty Life submitted Bosin's medical records for review by Dr. Gale G. Brown, Jr., one of Liberty Life's consulting physicians who is board certified in physical medicine rehabilitation and internal medicine.  Based on the medical and functional documentation Dr. Brown concluded that Bosin had "verifiable physical impairment related to his lumbar spine, shoulder, and knee conditions, supporting specific physical restrictions/limitations." Dr. Brown acknowledged the conflicting opinions among physicians regarding Bosin's work capacity.  However, based on Bosin's statement of capacity, as well as the surveillance, he concluded that Bosin was not totally disabled, but was capable of performing sedentary work subject to the following restrictions:

- Occasional standing/walking, 10-15 minutes per session.
- Frequent sitting, 60 minutes per session.

9

- No climb/stoop/kneel/crouch/bend/twist at waist level.
- Occasional driving.
- Occasional lift/carry/push/pull, 10-15 pound range.
- No reach/lift over shoulder level.  No repetitive rotation of the shoulders.

(AR 497-503).

An addendum to the Transferable Skills Analysis was prepared taking into consideration these restrictions.  Two of the four occupations identified in the prior analysis were still deemed viable for Bosin based upon the new restrictions.  (AR 495).

By letter dated February 1, 2006, Liberty Life issued a final determination upholding its decision discontinuing Bosin's receipt of long term disability benefits effective July 5, 2005.  (AR  609-618).

Bosin filed this action challenging the termination of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).  Liberty Life filed a counterclaim seeking equitable restitution of benefits it paid to Bosin based on Bosin's subsequent receipt of Social Security benefits.  This matter is now before the Court on the parties' cross-motions to reverse/affirm the termination of benefits and on Liberty Life's motion for summary judgment on its counterclaim.

## II.

A plan administrator's decision to deny ERISA benefits is reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The Plan at issue in this case provides:

10

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(AR 35). The parties agree that this language is sufficient to warrant application of the arbitrary and capricious review standard.

The arbitrary and capricious standard is "extremely deferential" and is "the least demanding form of judicial review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under this standard a benefit determination is upheld if it is "rational in light of the plan's provisions," *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)), or if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995) (quoting *Davis v. Kentucky Finance Co. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). Although the review is deferential, it is no mere formality. *Glenn*, 461 F.3d at 666. The court must still

11

review "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* (quoting *McDonald*, 347 F.3d at 172).

Liberty Life both determines eligibility for benefits and is responsible for paying benefits. Although this apparent conflict does not alter the governing standard of review, it is to be considered as a factor in determining whether the decision was arbitrary or capricious. *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 527-28 (6th Cir. 2003), *overruled on other grounds*, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003); *Univ. Hosps.*, 202 F.3d at 846.

There is no dispute that Bosin is disabled from his previous factory work which was strenuous and involved heavy lifting. The only question for this Court is whether Liberty Life's determination that Bosin is still capable of performing the substantial duties of some other occupation was arbitrary and capricious.

Bosin contends that Liberty Life's termination of disability benefits was arbitrary and capricious on three separate and independent grounds.

## A.  Lack of Improvement

Bosin contends that because there is no evidence of any improvement in his medical condition after he was approved for long term benefits, Liberty Life's termination of those benefits was arbitrary and capricious.

In the cases cited by Bosin the courts held that the termination of benefits was arbitrary and capricious where there had been no change in either the medical evidence or

the standard of review.  *See, e.g., Cook v. Liberty Life Ass. Co. of Boston*, 320 F.3d 11 (1st

Cir. 2003) (reversing termination where claimant provided the same type of evidence she had

always provided to show disability under "any occupation" definition); *Connors v.*

*Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2nd Cir. 2001) (reversing termination

where there was no significant change in claimant's physical condition and claimant had been

provided disability benefits for almost thirty months under the stringent "any occupation"

definition of disability); *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 840 (8th

Cir. 2001) ("Nothing in the claims record justified [the administrator's] decision that a change

of circumstances warranted termination of the benefits it initially granted.").  In other words,

these cases suggest that once benefits are granted, it is arbitrary and capricious to terminate

those benefits if nothing has changed.

   In contrast to the cases cited by Bosin, in this case benefits were not terminated on the

same record used to originally grant benefits.  There was new evidence considered by Liberty

Life.  Bosin had surgery, he had time to recover from surgery, and Liberty Life had additional

information from the IMEs, the FCE, and the video surveillance.  That new information

provided Liberty Life with a basis for reevaluating Bosin's disability.  Accordingly, assuming

Bosin's medical condition had not improved, the Court nevertheless cannot say that the

termination of benefits was arbitrary and capricious on that basis alone in light of the fact that

the termination followed Liberty Life's consideration of new evidence.

Bosin suggests that there was something unfair about Liberty Life's multiple reviews of his file, referring to them as "gratuitous," or "a third bite at the apple."  (Pl. Br. at 16). Reviews subsequent to a finding of disability are expressly allowed under the policy.  The Policy provides that the insurer will stop paying benefits under the Plan on the "date the Covered Person is no longer Disabled according to this policy."  (AR  28).  Liberty Life accordingly has the right to continue monitoring a claimant's condition to insure that the claimant continues to meet the definition of total disability under the policy.  The Policy also provides that Liberty Life has the right to have a claimant "examined or evaluated at reasonable intervals deemed necessary by Liberty" and that this right may be used "as often as reasonably required."  (AR  34).

In this case an IME was scheduled soon after Bosin was authorized to receive long-term benefits under the "own occupation" standard to insure that benefits were appropriate. After six months on long term disability under the "own occupation" standard, the standard changed to "any occupation."  Additional evaluation would have been appropriate at this time, but in light of Bosin's surgery the medical evaluation was postponed.  It was not unreasonable for Liberty Life to request a second IME after Bosin had time to recuperate from his surgery.  Accordingly, Liberty Life's multiple reviews do not suggest that Liberty Life acted arbitrarily or in bad faith.

## B. Basis for Rejecting Treating Physicians' Opinions

Bosin's second argument is that Liberty Life failed to fairly evaluate the relative merits of the opposing medical opinions as to Bosin's disability but instead simply chose to rely on the physicians hired by Liberty Life.

Under ERISA there is no mandatory deference accorded to treating physicians. *Evans v. UNUM Provident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006). In the ERISA context "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). Nevertheless, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* (quoting *Black & Decker*, 538 U.S. at 834).

In this case Liberty Life rejected Bosin's treating physicians' unanimous opinions that Bosin is totally disabled from any occupation as a result of his constant back pain. Liberty Life credited instead the opinions of its own medical experts that Bosin was capable of full-time sedentary work subject to some restrictions.

Upon review of the record the Court cannot say that Liberty Life's refusal to credit Bosins' treating physicians' conclusions as to disability was arbitrary. Liberty Life's experts did not disagree with the underlying medical evidence of Bosin's degenerative disc disease.

15

The disagreement concerned what Bosin could do notwithstanding his physical limitations and pain. On this issue Liberty Life had evidence from Bosin that he was capable of more extended sitting, standing and walking than his treating physicians credited him with. Liberty Life had video surveillance that showed Bosin standing, walking without a cane, driving, and shopping in time segments that were greater than the limitations suggested by his treating physicians. Liberty Life also had evidence that Bosin exaggerated his limitations at the IME and the FCE. This evidence provided a reasoned basis for Liberty Life's refusal to credit the opinions of Bosin's treating physicians on the ultimate issue of disability.

## C. Application of "Any Occupation" Provision

Bosin's third argument is that Liberty Life failed to properly apply the "any occupation" provision of the policy to Bosin's personal situation. Bosin has cited several cases in support of the proposition that any job for which he is considered qualified based on his "education, training or experience," among other requirements, must be "comparable in terms of remuneration" to his ordinary job. *See Peterson v. Continental Cas. Co.*, 116 F. Supp. 2d 532, 546 (S.D. N.Y. 2000) (holding that "reasonably fitted by training, education or experience" language must be comparable in terms of remuneration."); *Mossa v. Provident Life and Cas. Ins. Co.*, 36 F. Supp. 2d 524, 531 (E.D. N.Y. 1999) (construing "other occupation" provision to permit consideration of claimant's salary history). Bosin contends that he cannot be expected to work at a job that pays only half of his former income.

16

Because Bosin failed to present this argument to the plan administrator, the plan administrator has not had an opportunity to construe the relevant terms of the policy, as it is entitled to do under the Policy.  (AR 35).  The Court accordingly is doubtful that Bosin may properly raise this argument now.  *See Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 435 (6th Cir. 1998) (expressing doubt that claimant could properly raise argument not presented to plan administrator).  Nevertheless, even if the argument is properly raised at this juncture, the Court concludes that it does not suggest that Liberty Life has acted in an arbitrary and capricious manner.

Bosin's argument overlooks the fact that "Any Occupation" is defined in the Steelcase LTD policy in two alternative ways:

> "Any Occupation" means Any Occupation that meets the Covered Person's restrictions **or** Any Occupation for which he is or may reasonably become qualified based on his education, training or experience.

 (AR 6) (emphasis added).  Bosin's argument focuses on the second half of the definition regarding qualifications and ignores the first half of the definition regarding meeting restrictions.  None of the cases Bosin cites construed policies that contain the alternative "meets the Covered Person's restrictions" language.[2]  Bosin has offered no authority that

---

[2]*Mossa* is also distinguishable because it defined "other occupation" as any gainful occupation in which you "might reasonably be expected" to engage because of education, training or experience.  36 F. Supp. 2d at 531.  The quoted language, which suggests considerations beyond one's capabilities, is not found in the Steelcase LTD Policy.  Any persuasiveness that *Peterson* might otherwise have is diminished in view of the fact that its total disability analysis was vacated on appeal.  *See Peterson v. Continental Cas. Co.*, 282 F.3d 112, 118 (2d Cir. 2002).

17

would suggest that a job that "meets the Covered Person's restrictions" must be of comparable remuneration.  Moreover, the Sixth Circuit has upheld an "any occupation" provision that was interpreted to include a claimant's ability to pursue "gainful employment in light of all the circumstances." *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 615 (6th Cir. 1998) (quoting *Torix v. Ball Corp.*, 862 F.2d 1428, 1431 (10th Cir. 1988)). The jobs identified by Liberty Life would provide "gainful employment" even if they did not provide comparable remuneration.

The Court is not certain that it would agree with Liberty Life's termination of Bosin's long term disability benefits were it to analyze Bosin's claim for benefits on a *de novo* basis. However, the standard of review in this case is not *de novo*, so this Court's own opinion on the merits of the claim is largely irrelevant.  Based upon the administrative record presented, including the video surveillance, it appears to this Court that Liberty Life's benefit determination was "rational in light of the plan's provisions," *Univ. Hosps. of Cleveland*, 202 F.3d at 846, and that it was "the result of a deliberate, principled reasoning process" and "supported by substantial evidence."  *Glenn*, 461 F.3d at 666.  Accordingly, under the deferential arbitrary and capricious standard, the Court must affirm Liberty Life's decision to terminate Bosin's long term disability benefits.

### III.

Liberty Life has requested summary judgment on its counterclaim for restitution of LTD benefits overpaid to Bosin as a result of Bosin's subsequent receipt of primary and dependent Social Security benefits.

Under the Steelcase LTD Policy "Other Income Benefits" are deducted from the amount of the Disability Monthly Benefit. (AR 18). "Other Income Benefits" are defined to include disability benefits the Covered Person receives or is eligible to receive and/or that his dependents receive or are eligible to receive because of his Disability. (AR 24). The Policy provides that Liberty Life will reduce the disability benefits by the amount of Other Income Benefits that it estimates are payable to the Covered Person and their dependents unless the Covered Person signs a reimbursement agreement under which he agrees to repay Liberty Life for any overpayment resulting from the award or receipt of Other Income Benefits. (AR 26). The Policy further provides that "Liberty has the right to recover any overpayment of benefits caused by . . . the Covered Person's receipt of any Other Income Benefits." (AR 37; McGee Decl. ¶ 4).

On October 6, 2003, Bosin executed a Disability Payment Options Agreement, in which he elected to have Liberty Life pay him a monthly benefit with no reduction for estimated Social Security benefits until his application for Social Security benefits was decided. Under this option he agreed to repay any overpayment. (McGee Decl. ¶ 8 & Ex. 1).

When Bosin was approved for LTD "Any Occupation" benefits in June 2004, he was reminded of Liberty Life's right to recover any overpayment, and he was encouraged to notify Liberty Life if he began receiving other income benefits so as to avoid an overpayment. (AR 106). Liberty Life again reminded Bosin of his obligation to repay any overpayment based on any Social Security award by letter dated August 9, 2005. (AR 606-07).

By letter dated May 6, 2006, the Social Security Administration notified Bosin that he was entitled to monthly disability benefits beginning November 2003. Bosin received a $46,415 lump sum payment for benefits from November 2003 through April 2006 and began receiving monthly benefits of $1,807.50 prior to deductions for medical insurance premiums in May 2006. His minor child is also receiving benefits as a result of his disability. Liberty Life is not aware of the amount of the dependent Social Security benefits, but assumes that the amount is greater than $100.00.

Liberty Life contends that based upon Bosin's receipt of Social Security benefits, Bosin was only entitled to $50 per month under the Steelcase LTD Policy. According to Liberty Life, Bosin's receipt of Social Security benefits has resulted in an overpayment to him of $36,107.03 in LTD benefits.

Bosin does not deny that he signed a repayment agreement as a condition to his receipt of benefits under the Steelcase LTD Policy, nor does he dispute that the definition of "other income" contained in the Policy includes primary and dependent Social Security benefits. Bosin does not identify any disputed issues of fact. Instead, Bosin contends that Liberty

Life's counterclaim must be dismissed as a matter of law because it is barred by the equitable jurisdiction provision of the ERISA statute, § 502(a)(3)(B), and because it is barred by the legal process ban of the Social Security statute, 42 U.S.C. § 407. Bosin's arguments lack merit.

The ERISA statute permits a fiduciary to bring a civil action to obtain "appropriate equitable relief" to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3)(B). Bosin contends that Liberty Life's counterclaim is one for legal damages as opposed to equitable relief, and is therefore outside the jurisdiction of the Court. In support of this assertion Bosin cites *QualChoice, Inc. v. Rowland*, 367 F.3d 638 (6th Cir. 2004), where the Sixth Circuit held that the district court did not have federal question subject matter jurisdiction over a fiduciary's claim for reimbursement under the terms of an ERISA plan. *Id.* at 642. *QualChoice*, however, is no longer good law. *QualChoice* was rejected by the Sixth Circuit in *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 516 (6th Cir. 2006), and ultimately overruled and abrogated by the Supreme Court in *Sereboff v. Mid Atlantic Medical Servs. Inc.*, 126 S. Ct. 1869, 1873 n.1, 164 L.Ed.2d 510 (May 15, 2006). In *Sereboff* the Supreme Court held that a fiduciary's suit for reimbursement of medical expenses paid by the ERISA plan, when the beneficiary has recovered for its injuries from a third party, is a suit for equitable relief under § 502(a)(3). *Id.* at 1878.

Bosin contends that this case is distinguishable from *Sereboff* because in *Sereboff* the disputed funds had been set aside in an investment fund. *Id.* at 1873. By contrast, in this

action, Bosin's retroactive Social Security payment has been commingled with Bosin's general assets and applied to Bosin's living expenses and other obligations. (Bosin Aff. ¶ 4). Bosin contends that because there is no "specifically identifiable fund" that can be attached by an equitable lien, Liberty Life's claim is a legal claim rather than an equitable claim and it is outside the scope of § 502(a)(3).

Contrary to Bosin's assertions, *Sereboff* was not limited to specifically identified funds.  The Supreme Court clarified in *Sereboff* that reimbursement provisions in plan documents triggered the "familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.* at 1875 (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)).  Accordingly, the Steelcase LTD policy and the repayment agreement signed by Bosin create the type of equitable lien "by agreement" recognized and enforced by the Court in *Sereboff. See Gilcrest v. UNUM Life Ins. Co.*, No. 05-CV-923, 2006 WL 2251820 (S.D. Ohio, August 4, 2006) (holding that action to recover overpaid disability benefits was an equitable action for restitution); *Disability Reinsurance Management Servs., Inc. v. DeBoer*, No. 2:06-CV-21, 2006 WL 2850120 (E.D. Tenn. Sept. 29, 2006) (same).

Bosin's second argument is that Liberty Life's counterclaim is barred by the anti-assignment provisions of § 407 of the Social Security Act which provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to

22

execution, levy, attachment, garnishment, or other legal process, or to the
operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).  In *Ross v. Pennsylvania Manufacturers Assoc. Ins. Co.*, No. 1:05-0561,

2006 WL 1390446 (S.D. W.Va. May 22, 2006), the court held that the plan's attempt to

impose  a constructive trust on future Social Security payments to the plaintiff to the extent

necessary to extinguish an overpayment of long term disability benefits was prohibited by

§ 407(a).

Plaintiff's argument might have merit if Liberty Life were requesting an attachment

of Bosin's future Social Security payments, thereby creating a constructive trust in its favor

until Bosin's overpayment obligation is satisfied.  However, that is not what Liberty Life is

seeking.  Here, Liberty Life seeks the amount it overpaid Bosin.  Because it does not seek

any of Bosin's Social Security benefits, Bosin's § 407 argument is without merit.  *See*

*Gilcrest*, 2006 WL 2251820 at *2; *Smith v. Accenture U.S. Group Long-Term Disability Ins.*

*Plan*, No. 05-C-5942, 2006 WL 2644957 (N.D. Ill. Sept. 13, 2006) (distinguishing *Ross* and

permitting reimbursement of overpaid LTD benefits despite § 407(a)).

The Court concludes that Liberty Life is entitled to reimbursement of the amount it

overpaid Bosin.  The Court will accordingly grant Liberty Life's motion for summary

judgment on its counterclaim.

An order and judgment consistent with this opinion will be entered.


Date:   ___April 11, 2007___           /s/ Robert Holmes Bell
                                       ROBERT HOLMES BELL
                                       CHIEF UNITED STATES DISTRICT JUDGE